## GREEN BURTON V. THE STATE.

### No. 1401. Decided May 15, 1912.

### Rehearing denied June 19, 1912.

**1.—Murder—Practice in District Court—Motion for New Trial.**

Where, upon appeal from conviction of murder in the second degree, it appeared from the record that the motion for new trial was not sworn to, and there was no application praying for permission to file it, it not having been filed within two days after conviction, there was no error that the same was stricken from the record upon motion of the district attorney; there appearing no reasons why the same was not filed in time.   However, notice of appeal having been given, bills of exception will be considered.

**2.—Same—Charge of Court—Self-Defense—Possession of Property.**

Where, upon trial for murder, the evidence showed that the deceased was the owner of the horse about which the trouble arose and the homicide resulted, and that he had taken same from the wrongful possession of the defendant, there was no error in refusing a requested charge that the defendant had the right to pursue the deceased in an effort to recover possession of the horse, etc., and to shoot in self-defense; besides the issue of self-defense if raised at all was so slight that there was no error in court's failure to charge on self-defense.   Following Bishop v. State, 43 Texas, 390, and other cases.

**3.—Same—Continuance—Want of Diligence.**

Where, upon trial for murder, the application for continuance showed a want of diligence, and there was no affidavit attached to the motion for new trial by the alleged witness that she would testify as alleged, and other witnesses testified to the same facts, there was no error in overruling the motion.

**4.—Same—Evidence—Remarks of Counsel.**

Where defendant objected to the introduction of the witness on the ground that he was convicted of felony, and the objection was sustained, when defendant's counsel remarked that he would have offered said witness if he had not known of the conviction, to which the district attorney replied that the witness would contradict one of defendant's witnesses, there was no error; as defendant brought out the matter.

**5.—Same—Evidence—General Reputation—Defendant as a Witness.**

Where defendant testified, there was no error in permitting the State to show that the general reputation of defendant was bad in the community where he lived.   Following Huffman v. State, 28 Texas Crim. App., 177, and other cases.

**6.—Same—Practice in the District Court.**

Where the issue of self-defense was not raised by the evidence, there was no error that the court informed counsel for defendant, who were addressing the jury on the subject of self-defense, that the court would not submit that issue.

**7.—Same—Sufficiency of the Evidence.**

Where, upon trial for murder, the court submitted the issues raised by the evidence, which sustained the conviction, there was no error.

**8.—Same—Knowledge of Defendant—Charge of Court—Self-Defense.**

Where appellant claimed that the trial court erred in failing to submit

the issue of self-defense because defendant had no legal right to the horse in question, and contended that defendant had no knowledge that deceased had any right to the horse, but the record showed that defendant did have such knowledge, there was no error in the court's failure to submit the issue of self-defense.

Appeal from the District Court of Houston. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Moore & Sallas* and *Adams & Young,* for appellant.—On question of continuance: Clark v. State, 33 S. W. Rep., 224; Harris v. State, 18 Texas Crim. App., 287.

On the question of the court's failure to submit self-defense: Sargent v. State, 35 Texas Crim. Rep., 338; Carter v. State, 37 id., 407; Cochran v. State, 28 Texas Crim. App., 431; Nalley v. State, id., 391; Smith v. State, 15 id., 346.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with murder. When tried, he was convicted of murder in the second degree, and his punishment assessed at fifteen years confinement in the penitentiary.

The undisputed evidence would show that deceased, Nelson Hathorne, one year lived on the place of H. W. Moore, that while living on the place he purchased a horse, Mr. Moore signing the note as security. At the end of the year he left Moore's place, and carried the horse away with him, not having paid the note. Mr. Moore had it to pay. Some time after paying the note, Mr. Moore, in passing Nelse Hathorne's house, saw the horse, and while Nelse Hathorne was not at home took the horse and carried it away, leaving word for Nelse Hathorne to come and see him about the matter. Mr. Moore then turned the horse over to appellant, Green Burton, to keep for him (Moore) with instructions to let no one have it without written permission from him. Nelse Hathorne returned home and found appellant in possession of the horse, and on the night of the homicide he went to appellant's home and inquired for appellant and the horse, and upon being informed that appellant had ridden the horse to a supper at Jackson Randolph's, deceased went to Randolph's, took the saddle off the horse, and put it on a fence, and carried the horse away with him. When appellant was informed that deceased had taken the horse, he borrowed a horse from Buster Sheridan to return to his home. Before leaving Randolph's he was informed by Tom Bryant that "Nelson Hathorne had got the horse, and told him (Bryant) to tell appellant to not let that horse and old man Moore get him (appellant) killed." He says he was also advised, when he said he had to see about

the horse, "not to run on Nelse the way he was fixed," when he re-marked: "I can't help that, I have got to see about that horse." Ap-pellant went home, when he said he asked a negro woman, who was staying there, "Corrie, how long has it been since Nelson was here?" and she replied that it had not been long, and said: "Nelse told her to tell appellant .to be damn sure not to let that horse and old man Moore get him killed." Appellant then got his gun, loaded it, and rode on after deceased, and he tells what took place in the following language: "I overtook them between Uncle Dick King's and old lady Adilene Lovelady's, and when I got to them, Nelson spoke to me and said, 'Hey! who is that, Green?' but I didn't speak until I got closer, and then I said, 'Man, what do you mean by stealing my horse, don't you know that the white men will put you in the pen,' and he said, 'You had better be G— damn sure that you don't let old man Moore and this horse get you killed,' and I said, 'He is in my charge, and I am going to have him,' and he said that he would 'die and go to hell before he would let anybody have him,' and I had my gun this way (indicating) and I dashed up, and after he said that he would die and go to hell before he would let anybody have him, I said 'I have decided about the same thing,' and I cocked the gun, and he said, 'Look out!' and I *throwed* the gun over that way and shot, and he fell to my right and to his left and said, 'O, Green, you shot me' and then he raised up—I said he fell, but he squatted or fell or something, and he raised up immediately and then fell back to my left and his right, and when he raised up I started to shoot him again, but he fell that way, and said, 'O, Green, you have killed me,' and I said, 'No, you have killed your durn self,' and then he groaned, and after that he rattled sorter like a hog in the throat and everything hushed up and he never said any more."

1.    Under this testimony the court declined to submit the issue of self-defense. There is no motion for a new trial, the court having stricken it from the record, it not having been filed within the time provided by law. Of this action of the court appellant complains in one of his bills of exception. Article 819 of the Code of Criminal Procedure, provides that a new trial must be applied for within two days after conviction, but for good reasons shown the court, in cases of felony, may allow the application to be made at any time before the adjournment of the term at which conviction was had. This article, in effect, confides to the judicial discretion of the trial court the de-termination of whether applications for new trial made after the ex-piration of two days shall be permitted to be filed, and the exercise of that discretion will not be revised unless it has been abused. (White v. State, 10 Texas Crim. App., 167; Bullock v. State, 12 Texas Crim. App., 42; Smith v. State, 15 Texas Crim. App., 139; Hernandez v. State, 18 Texas Crim. App., 134.) The application for new trial is not sworn to and neither is there any sworn application praying for permission to file it. The district attorney filed a motion to strike

it from the record, and we presume the court heard the matter, and as no evidence which was heard on this hearing is presented to us by bill of exceptions or otherwise, we must presume that the court, in the exercise of his discretion, did not act improperly. If there was any good reason why the application was not filed within the time permitted by law, and reasons why the court should have later permitted it to be filed, evidence of that fact ought to have been introduced and presented to us in a bill of exceptions, otherwise we can not review the action of the trial court. To do so would be an arbitrary act on our part.

2. In the sentence, however, notice of appeal was entered of record, and this brings up for review all matters presented by bills of exception, and in a bill is presented the question of the failure of the court to charge on self-defense, and failure of the court to give a special charge requested by appellant. In the special charge the court was requested to instruct the jury that appellant had the right to pursue the deceased in an effort to recover possession of the horse, and had a right to go armed, and if deceased, on demand for the horse being made, made a hostile demonstration, defendant had the right to shoot in self-defense. If deceased had stolen the horse from appellant, there is no doubt the first part of this charge as requested by appellant should have been given. But was deceased guilty of theft? Under the evidence there is no doubt that deceased was the owner of the horse, and Mr. Moore had, without warrant of law, taken possession of the horse in deceased's absence and delivered it to appellant. Deceased would not have had the right to have forcibly taken the horse away from Mr. Moore or appellant, but he would have been required to pursue the remedy provided by law. But having bided his time and again peaceably gained possession of the horse, Mr. Moore nor appellant had any right to use force in an attempt to again gain possession of the horse, but they likewise must proceed in a lawful way to do so, and not undertake to repossess themselves of property taken under a claim of right and ownership by force. (Callicoatte v. State, 22 S. W. Rep., 1041.) Therefore, the first part of the charge requested should not have been given. As appellant was pursuing the deceased for the purpose of regaining the possession, we do not think his testimony raises the issue that at the time he fired the shot deceased had done or was doing any act that would create in his mind a reasonable apprehension or fear of death. This is treating the question from the standpoint of the evidence offered in behalf of the defendant. If we turn to the evidence offered by the State, and view the question of whether this issue was raised under all the evidence, we are clearly of the opinion that the issue is not raised, or if raised it is so slightly done that the failure of the court to charge thereon would not present reversible error. In the case of Navarro v. State, 43 S. W. Rep., 106, Judge Hurt, in commenting on the failure of the court to charge on self-defense in that case, says: "Now, if the court had submitted

manslaughter or self-defense, is it at all reasonable that an honest jury would have taken either view of this case, resting upon such a shadowy foundation as this? We think not. Chief Justice Roberts, in Bishop v. State, 43 Texas, 390, says: 'When the evidence tends sufficiently to the establishment of a defense or mitigation of the offense charged as to reasonably require a charge as applicable, is a question of sound judgment, to be exercised by the district judge in the first instance, and afterwards by the Supreme Court on appeal. If its force is deemed to be very weak, trivial, light, and its application remote, the court is not required to give a charge upon it.' " If from any source the issue of self-defense is raised in this case, it is so weak and trivial, that, in the language of Judge Hurt, no honest jury would have taken such view of this case, resting as it does upon such shadowy foundation. For other cases see Buckley's Digest, Self-Defense, section 161.

3. The court overruled an application for continuance. The appellant stated he expected to prove by Corrie Hopkins that on the night of the homicide deceased had told her to tell appellant "to be d—n sure not to let this horse and Bud Moore get him (appellant) killed." It appears that this witness had been subpoenaed at the fall term of court and attended, when the case was continued. At the spring term when this case was called and set for trial this witness was not in attendance on court, and no additional process was issued; on the day of trial she did not attend, but came right after the case was tried. Her affidavit as to what she would testify was not attached to the motion for new trial. Other witnesses testify to telling the appellant the same facts the same night, and as appellant does not in his testimony show that deceased was at the time doing any act which would lead one to believe that deceased was going to execute the threat, if threat it be considered, we can not say the court erred in this matter, viewed in the light of the testimony adduced on the trial. If appellant, or any witness, had testified that at the time or just prior to the shooting deceased did any act which would, in the light of this statement, have led appellant to believe that his life was in danger, and that deceased was about to draw a weapon, if other witnesses had not testified to the same facts, there might be ground for complaint. But the evidence would show that deceased was unarmed, and no witness says he made any demonstration as if to draw a weapon.

4. The appellant testified that on the night of the homicide Tom Bryant had told him that deceased had got the horse, and had told him, Bryant, to tell appellant to be sure not to let that horse and old man Moore get him killed. In rebuttal the State placed Tom Bryant on the stand, when the appellant objected to Bryant being permitted to testify on the ground that he had served a term in the penitentiary. The objection was sustained, when appellant's counsel remarked in the presence of the jury, that defendant would have offered Bryant as a witness if he had not known of the conviction. The district attorney

then remarked that Bryant would contradict a witness for the defendant. It is seen that the remarks were brought about by the improper remarks of defendant's counsel first, which remarks could only have been intended to convey to the jury that Bryant would testify to the facts as detailed by defendant, and if the State, to offset such remarks, also made improper remarks, defendant can not complain, having brought about the occasion.

5. After the defendant had testified as a witness, in rebuttal the State introduced witnesses who testified that the general reputation of defendant in the community where he lived was bad. This was objected to by appellant. When a defendant takes the witness stand to testify in his own behalf, he assumes the character of a witness and can be contradicted, discredited and impeached the same as any other witness, except that no statement made while under arrest can be introduced to impeach him. Huffman v. State, 28 Texas Crim. App., 177; Holley v. State, 46 S. W. Rep., 39; Morales v. State, 36 Texas Crim. Rep., 234.

6. While appellant's attorneys were addressing the jury they were arguing that defendant had acted in self-defense. The court called their attention to the fact that he would not submit that issue. If the issue had been raised by the evidence, of course the remark should not have been made, and the failure of the court to charge on that issue would work a reversal, but inasmuch as we have held that the court did not err in that respect, it was not improper for the court to inform counsel he would not submit the issue.

This disposes of all the bills of exception in the record, and we have read the charge of the court. It fully submits the issues of murder in the first and second degree, and manslaughter. The jury found appellant guilty of murder in the second degree, and the evidence would support the finding. The only serious question in the case is, does the evidence raise the issue of self-defense, and having decided this adversely to appellant's contention, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 19, 1912.

HARPER, Judge.—This case was affirmed at a former day of this term, and appellant has filed a motion for rehearing insisting that the court erred in holding that the trial court did not err in failing to submit the issue of self-defense. In the motion for rehearing it is said that we were in error in holding that appellant had no legal right to the horse, in that the evidence fails to show that defendant had any knowledge or information that deceased had any right to the horse. If such was the record there would be strength in the contention, but unfortunately for defendant the record does disclose that he knew it was deceased's horse. Lizzie Fleeks, a witness for the State, testifies that when she and deceased rode up to appellant's house, that Corrie

Hopkins, who was keeping house for appellant, told deceased that appellant was over at Bill Millers, and that he (appellant) "must be riding your (deceased) horse." Thus it is shown that his house-keeper knew it was deceased's horse. The witness further says that after deceased got the horse he gave the following message to Corrie for appellant: "You tell Green I say don't bother my horse no more, for it is my horse, and I will go down with him." Appellant says he got this message prior to the killing. Green Lovelady, a witness for defendant, testified: "Deceased was telling me that he owed Mr. Moore for the horse, and that Green Burton and Corrie Hopkins was telling lies to Mr. Moore and Mr. Moore was telling them to get the horse and bring it to him." Defendant himself when asked "what horse did you ride—Nelson's horse?" testified, "I reckon it was his horse. . . . I understand that Nelson Hathorne had possession of that horse prior to that time I had seen him riding the horse. I recognized the horse as being the horse that Nelson had formerly used." He says that Corrie told him that Nelson (deceased) had said for him to "tell him that he had got his horse." He says that Tom Bryant and others informed him that Nelson had gotten the horse, and left him word not to bother the horse or there would be trouble. The record as a whole conclusively proves that appellant knew that the horse belonged to Nelson Hathorne, the deceased, and this being true, the motion for rehearing is overruled.

*Overruled.*

Davidson, Presiding Judge, not sitting.