## OTIS YEAGER V. THE STATE.

No. 11298.   Delivered January 18, 1928.

Rehearing denied March 21, 1928.

**1.—Assault to Murder — Evidence — Expert Testimony — As to Deadly Weapon—Rule Stated.**

While an expert witness cannot give his opinion upon a matter about which the jury are as capable of judging as the witness is, and which the jury are impaneled to try, such witness can testify whether or not a knife of a certain kind and size in the hands of appellant, and in the manner of its use, was a deadly weapon, as tending to establish the intent or absence of an intent to kill.   See Hardin v. State, 51 Tex. Crim. Rep. 559; Svidlow v. State, 90 Tex. Crim. Rep. 510.   Underhill's Crim. Ev. (3rd Ed.), Sec. 193.

**2.—Same—Continued.**

One of the indispensable elements of an assault to murder is the specific intent to kill, which, under the instructions of the court, might be found from the manner in which the instrument was used with which the assault was made, but a witness will not be permitted to give his opinion as to appellant's intent, or lack of intent, to kill.   See Underhill's Crim. Ev. (3rd Ed.), Sec. 187; Hunt v. State, 9 Tex. Crim. App. 166.

**3.—Same—Charge of Court—On Self-Defense—Not Necessary.**

The evidence in this case, not raising the issue of self-defense, and being too remote and trivial to justify the submission of such issue, there was no error in failing to so charge.

**4.—Same—Charge of Court—On Temporary Insanity—Not Harmful.**

While the court instructed the jury on temporary insanity, produced by the voluntary use of ardent spirits, and that the jury, if they found such conditions to exist, might take such temporary insanity into consideration in mitigation of the punishment, such charge was more favorable to the appellant, under the facts, than he was entitled to, and certainly he was not entitled to a charge that such a condition of temporary insanity would authorize his acquittal under any legal authority known to us.

### ON REHEARING.

**5.—Same—Evidence—Of Deadly Character of Weapon—Properly Admitted.**

On a trial for an assault to murder, where the vital issue is the intent to kill, it is certainly permissible for a physician, who had examined the

wounds inflicted upon the injured party, with a knife in the hands of appellant, to testify that such knife in the manner of its use in the assault was a deadly weapon, and such testimony, whether given by a physician or any other person, would hardly be such error as to call for a reversal. Distinguishing Hilliard v. State, 218 S. W. 1052.

Appeal from the District Court of Bexar County. Tried below before the Hon. W. S. Anderson, Judge.

Appeal from a conviction for an assault with the intent to murder, penalty fifteen years in the penitentiary.

The opinion states the case.

*Dave Watson* of San Antonio, for appellant.

*C. M. Chambers,* District Attorney; *Lamar Seeligson,* Assistant District Attorney of Bexar County, and *A. A. Dawson,* State's Attorney, for the state.

MARTIN, JUDGE.—Offense assault to murder, penalty fifteen years in the penitentiary.

The facts briefly stated sufficient to illustrate the legal points discussed are as follows:

The appellant took prosecuting witness, Dorothy Bronson, to a resort called "Shadowland," near San Antonio, where some drinking occurred, after which they returned to the house of a friend, appellant at the time being very drunk. Here prosecuting witness testified that appellant pulled out a small pocket-knife with a blade about two and a half inches long and cut her three times. She afterwards testified that she would not say that the knife, blade and all, was longer than two inches, as she only got a glimpse of it. Appellant testified that the length of the knife, blade, handle and all, was about one and three-quarters inches, the blade about three-quarters of an inch, and that the knife was made to put on a watch chain. He testified:

"At that time I had this little gold knife off my chain and was cleaning my finger nails, and when I said I was going back after Dorothy McCann, she called me a s— of a b— and hit me and I cut her before I thought. * * * I did not have to stoop over. I don't know what I did. * * * After she slapped me, I cut her, they say three times, I don't even remember."

Prosecuting witness' testimony shows that the assault of appellant was an unprovoked and wanton one.

Dr. Pipkins testified that he dressed the wounds of prosecuting witness. That she had three cuts, one behind the left

ear, extending down about seven inches, about a quarter of an inch deep; another across the side and abdomen about six inches long and about half an inch or three-quarters of an inch deep. After so testifying, Dr. Pipkin was asked by the state:

"Doctor, I will ask you to state whether or not a knife with a blade from one inch to two inches long, in the hands of this defendant or a man of his size, used on a girl the size of Dorothy Bronson, that the evidence shows weighs 118 pounds, whether a knife of that character is capable of producing death."

To which, over objection, the witness replied in the affirmative. Many objections were urged to this question and the answer, among them being that it was not the subject of expert evidence and that it did not include the proof as to the nature and location of the wounds and what might or could be done with a weapon is not the test.

An expert medical witness cannot give his opinion upon a matter about which the jury are as capable of judging as he is nor upon any issue which the jury are impaneled to try. It would seem, however, that a physician familiar with human anatomy, the structure of its tissues, the depth below the surface of its vital organs, and the protection over each of them in the way of bones or muscles, is qualified and ought to be permitted to give an opinion as to whether a described instrument in the hands of a certain person is capable of causing death. Certainly this is a matter that the jury could not know about. In another form the question amounted to no more than whether or not the knife described could penetrate to a vital organ so as to cause death. Under the peculiar facts of this case this seems to have been made an issue. Certainly if the appellant was attacking with a weapon that was capable of penetrating to and severing or entering some vital organ, it was a potent circumstance against him which the jury were entitled to know, but if on the other hand the attack was made with an instrument not capable of producing death, both because of its size and the structure of the human anatomy, it will bear strongly on the issue of his lack of intent to kill. Under the facts of this case there was, in our opinion, no error in the court's action. Hardin v. State, 51 Tex. Crim. Rep. 559; Underhill's Crim. Ev. (3rd Ed.), Sec. 193; Svidlow v. State, 90 Tex. Crim. Rep. 510.

Exception was reserved to the refusal by the trial court to permit the following question to be answered:

"Doctor, the knife used in the hands of Otis Yeager to make that cut, as used in making that cut, was it used as a deadly weapon?"

The refusal to permit an answer to this question was proper. One of the instructions by the court to the jury was as follows:

"If the instrument be one not likely to produce death, it is not to be presumed that death was designed unless from the manner in which it was used such intention evidently appears."

One of the indispensable elements of assault to murder is the specific intent to kill, which under the instructions of the court might be found from the manner in which the instrument was used with which the assault was made. The above question clearly called for a conclusion upon an issue to be tried by the jury. This would, in effect, be asking the opinion of the witness upon one of the issues of the case on trial, which is never permissible. Underhill's Crim. Ev. (3rd Ed.), Sec. 187. Hunt v. State, 9 Tex. Crim. App. 166.

Various complaints are made with reference to the failure to properly charge self-defense and the improper references to self-defense contained in the court's charge. We do not think the evidence, fairly considered, raised the issue of self-defense. Appellant himself testified that after he was hit or slapped "he struck her before he thought." She had slapped him, after which he cut her, but there is no testimony to show that she was making any further attempt to attack him or that he believed that she was or that it reasonably so appeared to him or that he believed he was in any kind of danger. On the contrary he claims he stabbed her without thinking. This disposes of all these various contentions as any reference to self-defense in the court's charge or any charge upon self-defense would be favorable and not prejudicial to the accused. If there is testimony raising any issue of self-defense, it is too remote and trivial to justify its submission. Navarro v. State, 43 S. W. 106. Burton v. State, 148 S. W. 805.

The court instructed the jury:

"Now, if you believe from the evidence in this case, or have a reasonable doubt thereof, that the defendant, at the time of the commission of the offense for which he is on trial (if you find him guilty of such offense), was laboring under temporary insanity as above defined, produced by the voluntary recent use of ardent spirits, or by being struck in the face, or by a combination of both said causes, you will take such temporary insanity into consideration in mitigation of the penalty attached to the offense for which the defendant is on trial."

Appellant excepted to said charge, the substance of which is that if said intoxication and the blow rendered appellant temporarily insane, he was entitled to be acquitted and the jury should have been so instructed. A sufficient answer to this is that the record in this case does not raise the issue of temporary insanity so as to justify any such charge. The said charge was more favorable to the appellant than he was entitled to and to go further and instruct that he was entitled to an acquittal would be unauthorized by the evidence and unsupported by any legal authority of which we are aware.

Believing that the evidence is sufficient and that no prejudicial error was committed, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In as much as the knife used by appellant on the occasion in question did not, in the manner used, cause the death of the injured party, we have difficulty in following appellant in his insistence that he was injured by the action of the trial court in letting Dr. Pipkin testify that such a knife in the hands of a man of appellant's size, was capable of producing death if used on a girl weighing 118 pounds, about the size of said injured party. The case of Hilliard v. State, 218 S. W. 1052, cited by appellant, seems on such wholly different facts from the case before us, as to hardly be in point. The issue in that case turned upon the deadly character of a pistol used as a bludgeon—a question, the solution of which might be affected, but unjustly so, by the opinion of a doctor who was entirely without experience in judging the effect of such use. Hilliard was on trial for an aggravated assault, and the opinion of the physician that the pistol so used as a bludgeon was a deadly weapon was of much materiality. In this case the doctor whose testimony formed the basis for the objection did see and treat the wounds inflicted on the injured party by the knife in the hands of appellant. The charge here was assault to murder, and the conviction was for that offense. Regarding the weapon used, the court in this case told the jury that if they found from the evidence that such knife was one not likely to produce death, or if they had a

reasonable doubt thereof, then the intent to kill was not to be presumed, but must evidently appear. It must be manifest to everyone that a knife with a blade one to two inches long is capable of producing death when used upon another human being. The arteries in many parts of the body lie so near the surface as to be easily reached by the use of such a knife. The mere statement in evidence that such a weapon is capable of causing death, when death and its cause was not an issue, and when there was no serious controversy over the fact of such use, whether the testimony be given by a physician or any other person, would hardly be such error as to call for a reversal.

A further review of the record fails to cause us to change our minds in holding that the facts were not such as to call for a charge on self-defense. In our opinion the facts show an assault of such character as to merit a severe penalty.

The motion for rehearing will be overruled.

*Overruled.*