### GENE HILL V. THE STATE.

No. 19506. Delivered March 23, 1938.

164

The opinion states the case.

*G. A. Holloway,* of Clarksville, and *R. E. Eubank,* of Paris, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The offense charged is murder, and the punishment affixed is confinement in the penitentiary for fifteen years.

Appellant was charged with killing Martha Durham by beating her with his hands and stomping her with his feet. The testimony shows that Gene Hill, a married man with a wife and child, was riding in a Model T Ford coupe on Sunday afternoon in August, 1936, on a general drinking party—sometimes with young girls and boys—and that he had drunk so much whisky that he grew sick therefrom, but continued to drive and drink. Finally he got two young men, Jack and Stelman Miller, brothers, and two little girls in his coupe, one of whom was his wife's sister, Martha Durham, who was fourteen years old, and Gertrude Grimmett, who was thirteen years old. It seems that Martha was drinking whisky along with the others, but that she had not gotten drunk. They continued their driving about over the community roads until near dark, when appellant ordered one of the Miller boys, who was driving, to stop the car, whereupon the appellant caught Martha Durham and pulled her out of the car, and ordered the driver to go on up the road and stop a short distance away and wait for him. The persons in the car then heard some noises from where appellant and Martha were as though they were quarreling. In a few minutes appellant and Martha appeared at the car. Martha was crying and appellant was cursing her, and "they had a little fight there, and he [appellant] slapped her down, and kicked her and hit her, and stomped her. * * * Gene told Martha why he was beating her. He said something about why he was doing it." He told her he would have intercourse with her or kill her, and she answered, "No you ain't either." He was drinking and pretty drunk. The girl lay on the ground in front of the car, and appellant jerked her up in front of the car, and she was finally placed in the car. The appellant insisted on driving the car, and they started off, Martha sitting in the lap of one of the Miller boys. Soon thereafter the car turned over, but Martha and the Miller boy in whose lap she was sitting did not fall out. The car was turned back up, but Martha, who seemed to be suffering much pain, refused to get back in the car, and she was left in company with one of the Miller boys on the roadside. Eventually she was taken to her grandfather's, A. J. Grimmett's home about 1:30 in the morning. On the next day a doctor was called who found her abdomen badly bruised as though she had been struck with something like fists or stomped with feet. Her bladder was bursted, and such injuries caused the

onset of peritonitis, from which she died on the Thursday following.

Appellant's bill of exceptions No. 1 presents nothing of merit, and is overruled.

Appellant's bill of exceptions No. 2 seems to be an objection to certain argument of the State's attorney that finds its basis in the testimony of the physician who attended the deceased, and who testified that the wounds on her abdomen, which produced death, looked to him like such wounds that would be caused by beating with hands or stomping with feet. On account of the disposition to be made of this case we feel that such remarks will not again occur in the argument.

Bill of exceptions No. 3 complains of matters that will doubtless not again occur, but suffice it to say that we perceive no error therein.

Bill of exceptions No. 4 complains of the fact that the special venire was summoned by post card, and that all of such venire thus summoned failed to appear. We are of opinion that there is no error shown because of the fact that such jurors were summoned by post card, because all of such jurors did appear (save one who did not reside in the county) and were finally tendered to the appellant as prospective jurors. See Walker v. State, 283 S. W. 787, and cases there cited.

Bill of exceptions No. 5 complains of the fact that Dr. C. L. Lunsford testified that he attended Martha Durham in his capacity as a physician in July, 1936, whereas the transaction wherein appellant was being tried was in August, 1936. Undoubtedly the doctor was mistaken in the month in which he attended on Martha; for this testimony goes further, and he says: "I saw her one morning and she died the next day." He also located the wounds, testified as to their seriousness, and the hopelessness of her recovery. Other witnesses also fix the date as August rather than July, and the physician merely got his months mixed. We see no merit in this exception.

Bill of exceptions No. 8 is incomplete and does not show what testimony of Eula May Pryor appellant desired to introduce, and which introduction was prevented by the court's ruling. We have no way of knowing whether the exclusion of such testimony was error or not, and so this bill does not evidence any proposition upon which we can intelligently rule.

Bill of exceptions No. 9 complains of the court's refusal to allow the witness Johnny Dean to tell something that State's witness Jack Miller had told the witness relative to how Martha Durham received her fatal injuries. This bill is incomplete in that nowhere therein is it shown what Dean would have testified

to, and also because if it was intended to be offered as impeachment of the witness Miller, no predicate therefor had been previously laid. We see no error reflected in this bill.

Bill of exceptions No. 10 is also incomplete in that it complains of the failure of the trial court to allow the witness Mrs. Alma Hill to testify as to a purported dying declaration wherein she asked the deceased what was the cause of her being hurt, and who she blamed for it. What the answer would have been the witness did not disclose, and neither does the bill show. We perceive no error in the court's ruling.

Bill of exceptions No. 11 complains of the introduction of the testimony of Mrs. Ethel Laws wherein the following testimony was introduced: "I said 'Martha, you know I have told you many a time if you didn't quit going out in cars that you were going to be killed sometime, or come to your final ruin,' and she said 'Mrs. Laws, I wasn't hurt in no car wreck; the old car didn't hurt me.' * * *." We find from the court's qualification that this evidence was admitted in rebuttal of the appellant's wife's testimony, Mrs. Alma Hill, who testified to a dying declaration made by Martha, in substance, that she was hurt in the car, that she was caught between the top of the car and the door, right through her hips. Relative to the deceased's knowledge of approaching death, the witness Mrs. Hill said:

"Martha made this statement that I have said she made, and she made it all day Monday and Tuesday morning. I don't know how many times she made it, but she said it several different times. My sister and myself and my mother were there the first time she made it. When I say 'my sister' I mean Mrs. Durham. Mrs. Pryor was there one time when she said it. She was there on Monday at the time she made the statement, and that was the time she made the statement that she thought she never was going to get well, after Dr. Lunsford came there and didn't do anything for her, only just give her some medicine, and she said from then on out, all the way till the time she died, that she wouldn't get well. I never heard her say from then on that she had any hopes for recovery."

It will be noted that the statement made to Mrs. Laws and herein quoted was made on Monday night, and same was made after the evidence of Mrs. Hill shows that the deceased had abandoned all hope of recovery. We think such statement was based upon the same predicate as that of Mrs. Hill, and was entitled to be offered for what it might have been worth as contradictory to the statement testified to by Mrs. Alma Hill.

Bill of exceptions No. 12 complains of a failure to allow the mother of the deceased, Mrs. George Durham, to testify

relative to a statement presumably made to her by the deceased wherein the deceased told witness that she was afraid of Jack Miller, one of the State's witnesses. This testimony was not allowed, and we think it bears its own reason for its refusal. The witness continued: " * * * she told me she was afraid of him [Miller] long before she was ever hurt." This testimony was offered for the purpose of showing motive, so appellant's attorneys said, and we fail to see its admissibility for any purpose. Clearly it was hearsay, not based upon any predicate that would admit of such being taken out of the hearsay rule, was made before the deceased's injuries occurred, and should not have been admitted.

Appellant's bill of exceptions No. 13 complains of certain proceedings during the argument to the jury, which will not occur again.

The appellant also complains of the insufficiency of the testimony, and especially of the lack of corroboration of the witnesses Jack Miller and Stelman (Dad) Miller, both of whom the court charged to have been accomplices. The testimony of A. J. Grimmett, the deceased's grandfather, and father-in-law of the appellant, showed that after the fatal ride appellant came to witness' house and lay down on the floor and went to sleep; that deceased's father went for a doctor, and while he was gone appellant got up and slapped deceased's mother, also slapped his own wife, and cursed witness, and told witness if he went to court the next morning he would kill him. We quote from his testimony:

"I was the only man there then. He called me every son of a bitch he could think of, and told me if I went and turned him in, he said, 'You aim to, old man; you aim to go over there by the time it is daylight and turn me in, and if you do do that or swear it against me, sir, I'll kill you.' "

"Gene Hill cursed and abused Rena Durham too on that occasion. Rena was the mother of the girl. During that time the injured girl was laying back there on the bed suffering death, and she heard it, but she didn't make any remarks about it that I remember of. Martha Durham told me that she couldn't get well. After she told me she couldn't get well she told me something about how it happened. She said that Gene Hill and Mary Belle Kelly and Jack Miller beat her to death, and I am sitting here swearing this and don't expect anything else only to be shot down and killed just like a dog, but I am going to tell you the truth."

Under the testimony of the two Miller boys unquestionably there was established proof of violence to the body of this girl that could have resulted in her death; then the conduct of the appellant as testified to by the grandfather, soon afer the appearance of the injured girl at the grandfather's house, and his threats to the grandfather, and the declaration made by the injured girl, seem to be a sufficient amount of testimony outside of the Millers—if the jury believed the Millers' testimony to have been true—to have tended to connect the appellant with the fatal injury to Martha Durham. Dr. Lunsford said that the girl died of a bursted bladder, which could have been caused by striking her body over the bladder with hands or feet. The jury has seen fit to say that it was their opinion that she met her death in such a manner, and that appellant inflicted the blows that caused such injuries, and we see no reason to say that the testimony does not fulfill the legal standard.

The appellant also requests a new trial on the ground of the newly discovered evidence of Gertrude Grimmett, and a copy of a letter and statement from said Gertrude Grimmett are appended to such motion. We think that this matter will not again present itself at another trial.

Appellant's bill of exception No. 6 is of serious import, and must cause a reversal of this cause. It complains of the testimony of Dr. C. L. Lunsford, and arose as follows: It seems that Dr. Lunsford was called to see Martha Durham the day before she died, and made an examination of her. He found her abdomen badly bruised and swollen, and testified, over appellant's objections, that such bruises *could have been* made by being struck with fists and stomped. Upon an overruling of appellant's objection thereto, he further testified: "It is my opinion that her death was caused from blows and being stomped." To which the bill shows that appellant objected because the witness was giving an opinion as to how the bruises and injuries sustained by the said Martha Durham had been caused; that same was a conclusion; that regardless of the fact that said witness was a medical expert, that his conclusion that Martha Durham's death had been caused by kicks and stomps was not final but was only his personal opinion.

In our opinion this witness should have been allowed to testify, as he did, that the bruises and wounds on the deceased's body *could have been* caused by blows from fists and stomping of the feet, but when he went further and said that same were thus caused, he invaded the province of the jury; that such a conclusion was relative to a hotly contested fact to be decided by the jury alone, and was outside the realm of medical expert

testimony. It was the contention of the appellant that Martha Durham received her injuries in the overturning of the automobile, and not from the hands or feet of anyone, and the theory of the State was diametrically opposed thereto, in that it contended as alleged in the indictment that the appellant killed deceased by "beating her with his hands and kicking and stomping her with his feet." The matter was closely contested, one dying declaration laying the blame on the automobile wreck, another claiming that appellant and two others beat her, thus causing her condition. In such a state of facts, to allow this medical expert to testify as to his opinion on the very matter at issue between the parties, and to be decided by the jury, was such a serious error that we think it calls for a reversal of this cause.

In the case of Maroney v. State, 29 S. W. (2d) 772, we find the following: "It is the general rule that neither a nonexpert nor an expert witness may thus be permitted to give an opinion upon the very issue the jury are impaneled to try, and about which the jurors are as well qualified to speak as the witness. Davis v. State, 24 S. W. (2d) 417; Boles v. State, 108 Texas Crim. Rep. 204, 299 S. W. 407; Bennett v. State, 95 Texas Crim. Rep. 70, 252 S. W. 791; Pearson v. State, 56 Texas Crim. Rep. 607, 120 S. W. 1004."

The case of Langford v. State, 63 S. W. (2d) 1027, is much like the present one, and we quote therefrom: "So in the case under consideration the question to be solved by the jury was whether deceased's death was due to an accident or due to the fact that he was struck by some blunt instrument in the hands of defendant; that was the vital issue in the case to be solved by the jury and not to be solved for them by witnesses. The doctors could, of course, give the location of the wounds upon the body of deceased as found by them, the condition of the wounds, and then state their opinion as to whether made with a blunt or a sharp instrument, but not whether they could have been made by an automobile running over deceased as that did not involve any technical skill or scientific learning, but common experience and common sense as to which the jury could judge for themselves. See Tolston v. State, 93 Texas Crim. Rep. 493, 248 S. W. 50; Maroney v. State, 115 Texas Crim. Rep. 298, 29 S. W. (2d) 772."

We feel that the very question to be decided by the jury had already been answered by Dr. Lunsford, and such being an unwarranted and serious invasion of the jury's province, same presents such an error that it should cause a reversal of this

cause, and the judgment is therefore reversed and the cause remanded.