DAVID CORDERO V. STATE

No. 28,548. November 28, 1956.
Appellant's Motion for Rehearing Overruled.
(Without Written Opinion) January 23, 1957.

R. *Richard Thornton,* Galveston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady* and *Thomas D. White,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is aggravated assault; the punishment, 2 years in jail and a fine of $500.00.

The injured party, H. J. Luhn, a 60-year-old Houston business executive, left his place of business late in the evening in his automobile and first saw the appellant and his companion as he was traveling on Navigation Boulevard. They pulled up beside him and shouted something to him, but since he did not know them he continued on his way. According to his testimony, they followed him for two miles and made several efforts to stop him. Finally, when he came to a red light, the appellant and his companion Mize left their automobile, which had come to a stop immediately behind him, and approached his automobile. Having become apprehensive, the injured party opened his pocket knife in order to defend himself but was never able to do so because the appellant entered his automobile from the right side, grabbed his wrist, and proceeded to hit him about the head and face. Mize then pulled the injured party out on the left side, and the two of them kicked him while he was lying on the pavement. According to Luhn, the appellant inquired of his companion. "Have we given him enough?" and Mize replied, "No. Let's give him some more," and the kicking and beating continued until police officers arrived upon the scene. The injured party remained in a hospital for a week following the assault.

The witness Free testified that he was employed at a filling station and witnessed the assault. He stated that the appellant first beat Luhn about the head and face with his fist, and, after

Luhn was out on the ground, the appellant stood on one of Luhn's legs and held his other leg up in the air while Mize stomped him. Free testified that the appellant cursed Luhn in a loud voice and that the officers had difficulty in getting the situation under control after they arrived.

Mrs. Doris French testified that as she passed the scene of the assault at the time established by the other witnesses she saw an elderly man at the wheel of an automobile, one man on the outside pulling on the old man, and another on the inside hitting him. She stated that she then saw the old man out of his automobile lying on the ground and the two men were hitting and kicking him.

William Kincaid testified that as he drove by the scene of the assault he saw Luhn lying on the pavement and that the appellant was holding one of Luhn's feet while Mize kicked him.

Dr. Taylor testified that he treated the injured party on the the night of the assault and thereafter, and described his injuries as follows: three knots on his head, a marked swelling on his face and of one eye, abrasions on his ear, a break through the lip, a marked contusion on the right loin, and a fractured right rib over the area of his kidney.

The appellant, a 23-year-old policeman from the city of Galveston, testifying in his own behalf, stated that he and his fellow officer Mize from Galveston came to Houston on the night in question to attend the Houston police officers' dance. Both men were in civilian clothes and off duty. They stopped on the way into town, had a beer, and called the Houston police for directions to where the dance was to be held. They had a bottle of whiskey on the front seat of their automobile, and it was broken during their pursuit of Luhn. According to the appellant, Luhn sideswiped their automobile, and they pursued him in order to secure the necessary information to make an accident report. Their pursuit, according to the appellant, lasted only five blocks, and, as he approached Luhn's automobile, he saw the knife in his hand and grabbed his wrist and hit him across the mouth. He stated that Mize pulled Luhn out of his automobile but denied that Luhn was ever prone on the pavement or that either of them ever kicked him.

Appellant testified that he and Mize were released on bond at ten o'clock that night and went to the dance.

The two Houston police officers who arrested the appellant and Mize testified for the defense and stated that Luhn was standing up at the time they arrived upon the scene.

The jury resolved the issue of fact against the appellant, and we find the evidence sufficient to sustain their verdict.

We shall now discuss the contentions advanced by the appellant's able attorney in his brief and argument.

He contends that Dr. Taylor was not shown to be a qualified medical expert witness because the state failed to establish that he had passed a medical examination before the Texas State Board or had registered with the district clerk of the county where he practiced. It was shown that the doctor was a graduate of Baylor Medical College and had practiced medicine for nine years. In Silva v. State, 152 Texas Cr. Rep. 545, 215 S.W. 2d 887, this court held that, though not licensed, a physician with sufficient qualifications might testify as an expert witness.

Appellant next complains of the asking of the following question:

"Q. Doctor, in your opinion, if a man the age and size of Harrison Luhn was beaten * * * about the head by a person the size of this defendant, CORDERO, with his fists, and kicked in the region of the right loin, where you indicated Mr. Luhn had some contusions, by an adult male, with his foot with a shoe on that foot, would that be a means calculated to produce great bodily injury? A. * * * * Yes."

Among other objections urged was that the doctor's answer to this question invaded the province of the jury.

We shall discuss the cases upon which the appellant relies.

In Langford v. State, 124 Texas Cr. Rep. 473, 63 S.W. 2d 1027, this court said:

"The doctors could, of course, give the location of the wounds upon the body of deceased as found by them, the condition of the wounds, and then state their opinion as to whether made with a blunt or a sharp instrument, but not whether they could have been made by an automobile running over deceased as that did not involve any technical skill or scientific learning, but common experience and common sense as to which the jury could judge for themselves."

So then it will be seen that the court held in that case that the jury possessed as much information as did the doctors on the pure fact question presented in the doctors' answer, and therefore the testimony of the expert witness could not assist the jury in arriving at the truth.

In Hill v. State, 134 Texas Cr. Rep. 163, 114 S.W. 2d 1180, the court cited the Langford case with approval and had this to say:

"In our opinion this witness should have been allowed to testify, as he did, that the bruises and wounds on the deceased's body could have been caused by blows from fists and stomping of the feet, but when he went further and said that same were thus caused, he invaded the province of the jury * * *."

It is obvious from the report in the Hill case that when the witness made the categorical statement that death was caused by the blows and stomping he went beyond the bounds of expert testimony. When he stated that the blows could have caused the injuries, he had gone as far as he could in aiding the jury.

In Boles v. State, 108 Texas Cr. Rep. 204, 299 S.W. 407, we reversed the conviction because the expert witness was permitted to testify that in his opinion the deceased was down upon the ground at the time he was shot. This court held that the trial court erred in permitting such an answer over the objection that it constituted a conclusion of the witness on a matter which was not the subject of expert testimony.

We fail to see how either of these cases would be controlling in the case at bar.

The objection that the answer of the expert witness "usurps the function" or "invaded the province of the jury" has been the subject of several recent treatises. Wigmore denominates such objections as "empty rhetoric." 7 Evidence, Sec. 1920. McCormick says that if such objections were taken literally, they would be absurd. Evidence, Sec. 12, p. 26. He points out further that the same courts which sometimes sustain such an objection uniformly allow the expert witness to give opinions when the questions of value, sanity, handwriting and identity are in issue. Judge James R. Norvell, in 31 Texas Law Review, p. 731, discusses the objection fully in his scholarly article, "Invasion of the Province of the Jury." Therein, he says:

"The rule supported by the later American authorities is in substantial accord and may be stated as follows:

"A witness in testifying as to what he has perceived may employ inferences and state all relevant inferences, including those embracing ultimate fact issues to be decided by the trier of fact, provided he possesses a special knowledge, skill or experience not possessed by the trier of fact, which places him in a better position to draw the inference than is the trier of fact, or if the witness may more adequately and accurately communicate what he has perceived to the trier of fact by testifying in terms of inference or by stating inferences, and his use of such inferences in testifying will not be likely to mislead the trier of fact to the prejudice of the objecting party."

Recently, in Hale v. State, 154 Texas Cr. Rep. 630, 229 S.W. 2d 796, in discussing such an objection to a doctor's testimony, we said:

"In the first place, we think the answer was admissible. The witness was an expert physician and surgeon, and should know the area injured by the blow, the arteries, nerves and other portions of the human anatomy affected thereby; he knew the possible effects of such injury and the possible danger caused thereby. The jury were not supposed to know what portions of one's bodily structure could be, and doubtless were, involved in this stricken area, nor what effect violence thereon would necessarily have."

Appellant next complains of the admission into evidence of certain colored photographs of the injured party taken at the hospital sometime after his admission. The pictures were not sent up with the record in this case, but the record does disclose that Dr. Taylor testified that they were a true representation of the condition of Mr. Luhn when he saw him at the hospital. This, we have held to be sufficient predicate for the admission of pictures into evidence. McFarlane v. State, 159 Texas Cr. Rep. 658, 266 S.W. 2d 133, and Richardson v. State, 159 Texas Cr. Rep. 595, 266 S.W. 2d 129.

Appellant's last two complaints relate to alleged gross misconduct of state's counsel. The record reveals that a question was asked; appellant's counsel stated, "I think that is improper;" the court agreed with him and instructed the jury not to consider the unanswered question; and the appellant seemed to be satisfied with the ruling of the court. We have concluded that the asking of the question did not constitute reversible error.

Appellant's bill of exception to argument, omitting formal parts, reads as follows:

"* * * Mr. Ernst, Assistant District Attorney for Harris County, Texas, did refer to the Defendant who testified as 'lying,' in his opening argument to the jury; that Defense Counsel timely objected to such statement, and the Court sustained Counsel's objection thereto, and instructed the jury to disregard the same; and, further, the Court admonished State's Counsel not to so speak again in his argument. That no record was made of said argument by the Court Reporter."

We are aware of no authority which holds that such a bill reflects reversible error.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge, dissenting.

The conviction was predicated upon Subdivision 8 of Art. 1147, P.C., which renders an assault aggravated when committed "with premeditated design, and by the use of means calculated to inflict great bodily injury."

Here is the question propounded to Dr. Taylor:

"Doctor, in your opinion, if a man the age and size of Harrison Luhn was beaten about the head by a person the size of this defendant, Cordero, with his fists, and kicked in the region of the right loin, where you indicated Mr. Luhn had some contusions, by an adult male, with his foot with a shoe on that foot, would that be a means calculated to produce great bodily injury?"

The witness answered the question in the affirmative.

When my brethren hold such question and answer to be legitimate and proper, they have effectually destroyed the rule, and all the authorities supporting that rule, that a witness cannot express, by his testimony, an opinion on the very issue the jury was trying.

The issue the jury was trying was whether the means used were calculated to produce great bodily injury.

The question and answer had all the force and effect of the

·doctor's telling the jury that in his opinion the appellant was guilty.

Heretofore, it has been the rule that no witness, expert or nonexpert, was authorized to testify before the jury and express to them his opinion as to the very question or issue that they must determine by their verdict. Hill v. State, 134 Texas Cr. Rep. 163, 114 S.W. 2d 1180; Langford v. State, 124 Texas Cr. Rep. 473, 63 S.W. 2d 1027. It was also the rule that a medical expert could not give an opinion upon matters about which the jurors were as well qualified to speak as the witness, himself. Davis v. State, 114 Texas Cr. Rep. 72, 24 S.W. 2d 417; Boles v. State, 109 Texas Cr. Rep. 47, 5 S.W. 2d 509; Seaton v. State, 112 Texas Cr. Rep. 301, 16 S.W. 2d 823; Yeager v. State, 109 Texas Cr. Rep. 213, 3 S.W. 2d 808.

But now, according to the majority holding here, the state is free to call witnesses, expert or nonexpert, and have them testify that, based upon the facts in evidence, it is their opinion that the accused is guilty of the offense charged.

I respectfully enter my dissent.