**Benny Lee BRUMBELOW, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 35257.**

Court of Criminal Appeals of Texas.

Jan. 30, 1963.

No attorney on appeal for appellant.

Frank Briscoe, Dist. Atty., Gus J. Zgourides and Lee P. Ward, Jr., Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for assault with intent to murder with malice; the punishment, confinement in the penitentiary for fifteen years.

The injured party, Cynthia Dianne Whitmire, was the two-year-old daughter of Mrs. Geneva Morris, who lived with the appellant in the city of Houston. On September 12, 1960, Cynthia was brought to the office of Dr. L. D. Bricker by her mother, at which time she had certain contusions and bruises about her face and body and was in a semi-comatose condition. From his observation, Dr. Bricker assumed that Cynthia either had a skull fracture or a concussion, and recommended that she be hospitalized. Thereupon, she was taken by her mother to Jefferson Davis Hospital, where she was observed by Dr. Mark Kubala, a neurosurgeon. Dr. Kubala testified that upon his physical examination of the child when he first saw her in the emergency room he found:

" * * * there was the inch and a half cut in the right occipical region, which is the right part of the head in the back. There was a swelling in the right forehead, and there was swelling

around the right eye. The swelling around the right eye was what we call ecomotic, or discolored. In lay terms, it is sometimes called a blue-black eye. There was tenderness to the touch of this swelling. There was swelling in the right ear, and on examination of the external *ortatory* canal, or the ear, as we know it; with an *ordascope*, we found blood behind the eardrum, which indicated to me a baser skull fracture. I found multiple bruises over the body, including the right hip, the thigh, the right thigh, the left leg, and the back and the abdomen * * *. The blood behind the eardrum and the discoloration in back of the ear are diagnostic as a baser skull fracture. By baser, we mean a fracture of the skull in the bottom part of the skull, that is, the part where the ear is connected * * *."

Dr. Kubala further testified that from the physical examination showing a baser skull fracture he concluded that the child had sustained a severe head injury which could cause death and, consequently, he placed her on the critical list, and that after receiving treatment she was discharged from the hospital on September 22.

Dr. Jim J. Moore, testified that he first saw the child in the hospital, on September 13, 1960, and his testimony corroborated that of Dr. Kubala as to the description and extent of her injuries.

Four photographs taken of the child following her admission to the hospital were introduced in evidence as state's exhibits 1, 2, 3, and 4, after being identified by Dr. Kubala as truly and accurately representing her condition when he saw her in the hospital except for a small bandage which had been applied to her scalp. The photographs show certain bruises and abrasions on the child's body, mainly about the face and head, both eyes being discolored and the right eye closed.

Appellant was arrested by Officer John J. Orlando on September 19 and, after having been duly warned, made and signed a written statement to the officer in which he admitted having struck the child on September 11, when the two were alone together in the home. The statement was introduced in evidence by the state, with the exception of certain portions offered by appellant. In the statement, appellant among other things stated:

"On Sept. 2, 1960——I rented a house at 4729 Ramus street, here in Houston. Geneva and I moved in that night. On labor-day, which was Sept. 5, 1960—— Geneva and I went to Geneva's mothers and got Cynthia and Geneva's belongings.

"On tuesday morning Sept. 6, 1960—— Cynthia Dianne Began crying for some reason or another, I don't remember now, but to get her way she will have a temper fit. I got mad and took a belt and whipped Cynthia with it. Geneva *had gave* me permission to whip Cynthia, but Geneva became angry on this occasion for Geneva felt that I had whipped Cynthia Unnecessary hard. In the next two or three days I had to whipp Cynthia several other occasions, however not as hard as before.

"On Sunday Sept, 11, 1960 Geneva had to go to the store. I stayed home with Cynthia and was washing dishes. Cynthia was crying because she wanted to go to the store with her mother. I gave her a small pie plate to wash, but she was making a mess with it and I then put Cynthis on the Drainboard near the sink. Then Cynthia put her feet in the dish water and was playing with the pie plate. Cynthia then started her crying again and I tried to get her to stop crying by talking to her, but she just kept on and I guess I lost my temper and struck cynthia on her face with the back of my left hand, and the blow caused her head to hit the edge of the cabinet * * * I picked her up and was bathing her face when Geneva came in from the store and I told Geneva what had happened, how-

**234**

ever at the time I did not tell Geneva that I had struck Cynthia causing Cynthia to hit the back of her head on the cabinet * * *."

As a witness in his own behalf, appellant denied having struck the child on September 11th and testified, in substance, that her injuries were caused from falling from the drainboard to the floor while he was out of the room and had gone to the front door.

Dr. Kubala testified that in his opinion the injuries he found on the child's body were not compatible with her falling off the drainboard but were compatible with a child's being beaten about the face, head, and body by a man the size of appellant, with his fists, and knocking the child's head into a sharp-cornered object that cut the back of the head.

Appellant further repudiated that portion of his confession in which he admitted striking the child, and testified that the reason he made such statement was to prevent charges being filed against the child's mother.

Officer Orlando, to whom the confession was made, denied that he or anyone else threatened appellant with any harm or that he threatened to file charges against the child's mother.

The record presents no objections to the court's charge, nor does it contain any formal bills of exception, and no brief has been filed on behalf of appellant.

We have examined the informal bills of exception appearing in the statement of facts and find no reversible error therein.

■ The admission in evidence of the four photographs of the minor child, to which appellant objected on the ground that they were highly inflammatory, were hearsay, and did not truly depict the child's appearance and would inflame the minds of the jury, does not present error. The photographs, except for the small bandage, were shown to truly portray the appearance

of the child when first admitted to the hospital. The photographs showing the condition of the child's body at that time could shed light on and aid the jury in passing upon the issue raised by appellant's testimony as well as on the issue of malice and intent to kill. Gibson v. State, 153 Tex. Cr.R. 582, 223 S.W.2d 625; Ray v. State, 160 Tex.Cr.R. 12, 266 S.W.2d 124; Alcorta v. State, Tex.Cr.App., 294 S.W.2d 112; Cordero v. State, 164 Tex.Cr.R. 160, 297 S.W.2d 174; and Wilkerson v. State, Tex. Cr.App., 342 S.W.2d 431; and Cantrell v. State, 156 Tex.Cr.R. 329, 242 S.W.2d 387.

■ The evidence, viewed in the light of appellant's confession, the tender years of the child, and injuries inflicted, is sufficient to sustain the jury's verdict finding appellant guilty of assault with intent to murder with malice aforethought. See Hignett v. State, Tex.Cr.App., 341 S.W.2d 166.

The judgment is affirmed.

Opinion approved by the court.