**Ivory Renard HARRIS, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–81–0462–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 22, 1982.

Rehearing Denied in Part and Granted in Part June 24, 1982.

Discretionary Review Refused Oct. 13, 1982.

Don Bradshaw, Hugh J. Plummer, Houston, for appellant.

Alvin M. Titus, Houston, for appellee.

BASS, Justice.

This is an appeal from a conviction for aggravated robbery. The jury returned a verdict of guilty. The court found the enhancement portion to be true, and sentenced the appellant to not less than fifteen nor more than twenty-five years imprisonment.

On the afternoon of May 2, 1980, the complainant, the day shift manager of a Jack-in-Box restaurant, had gone to a nearby bank to get some roll change and dollar bills. As she was backing into the parking space at the restaurant she noticed a brown four-door car pulling in on the other side of her truck. The appellant came from the car to the driver's side of the truck, pulled a gun, put it up to the complainant's face, and said, "Give me all the money, give me what you have in your purse." She gave him $50.00 from her purse, and the money bag which belonged to the Jack-in-the-Box restaurant. The appellant ordered the complainant out of the truck and told her to run, which she did.

In his first ground of error, the appellant asserts that the trial court erred when it failed to allow into evidence the testimony of the appellant's expert witness, Kenneth R. Laughery, Ph.D., who had been called by the defense to testify about the human memory processes and to give his opinion whether the complainant could remember and correctly identify the appellant from their brief encounter. The court felt that Dr. Laughery's testimony would invade the province of the jury, as the trier of fact, to decide the credibility of the complainant's testimony. He refused to allow Dr. Laughery to testify before the jury, but he did allow the expert to testify before the court.

The appellant asserts that the psychologist's testimony would have aided the jury in evaluating the complainant's identification of the appellant.

In *Hopkins v. State,* 480 S.W.2d 212 (Tex. Cr.App.1972), the Court of Criminal Appeals carefully analyzed the issue of the use of expert psychiatric testimony to impeach the credibility of a witness. In *Hopkins,* the Court held that the "invasion of the province of the jury rule" is overruled. An expert witness may give his opinion in regard to issues which must be decided ultimately by the jury as long as three criteria are met: 1) The expert must be qualified to testify; 2) The subject of the testimony must be one upon which an expert opinion may aid the jury in its decision; and, 3) The expert must not state a legal conclusion.

The Court in *Hopkins* went on to decide, however, that although the testimony of a psychiatrist is not per se inadmissable because it invades the province of the jury, it is inadmissible in most instances for impeachment purposes. The Court's rationale was as follows:

Our principle fear in this regard is that the admission of psychiatric testimony will often cause the trial to become not only a trial of the defendant, but also a trial of the witness. If one side calls a psychiatrist for impeachment purposes, the other side will feel duty bound to do likewise (and rightly so).

The result will likely be delay, confusion of the principal issues of the trial, and expense to the parties.

.     .     .     .     .

The state of psychiatry is such that it is more an art than a science. There exists a great deal of divergence of opinion among eminently qualified and learned men of the profession.

.     .     .     .     .

Often the jury would be subjected to conflicting witnesses and inexact opinions, the value of which would be minimal in enabling the jury to decide the issue of credibility.

The Court felt that the jury would not be left unaided without psychiatric impeachment testimony because the usual impeachment evidence, such as prior inconsistent statements and criminal convictions, is still available to the jury to aid in the determination of a witness's credibility. Also see *James v. State,* 546 S.W.2d 306 (Tex.Cr. App.1977).

There is persuasive argument which can be made for admitting that the testimony of an expert psychologist or psychiatrist provided that the following additional restrictive conditions are imposed: (1) he must apply his factors of expertise to the witness by proper examination; (2) he must apply the circumstances that occurred during the event to the witnesses' testimony; and (3) he must limit his psychological evaluation or prognosis thereupon to that testimony. However, this court is bound to follow the rule announced in *Hopkins,* and in this cause the court's denial was based upon the predicate that the testimony would invade the province of the jury to decide the credibility of the witness's testimony, not upon the predicate of impeachment. Therefore, applying that rule to the facts of the case at bar, the trial court did not abuse its discretion in excluding the pro-offered testimony.

The appellant's second ground of error asserts that the trial court erred in the punishment phase of the trial by admitting into evidence State's Exhibit No. 2, a xeroxed copy of the appellant's pen packet, to prove the enhancement portion of the indictment.

The appellant plead not true to the enhancement allegation. The State called Leslie L. Borgstedt, a Deputy Sheriff assigned to the Identification Division of the Harris County Sheriff's Department, who was shown to be an expert in fingerprint identification. The court admitted into evidence, without objection, a three-by-five card which contained a thumbprint of the appellant which had been taken earlier that day. The State attempted to offer a xeroxed copy of the appellant's pen packet. The appellant objected to its admission on the grounds that, as a copy of the original pen packet, it had not been properly authenticated, and that no proper predicate had been made for its admission. The objection was overruled and the document was admitted. The witness went on to testify that he had compared the fingerprints taken from the appellant with the fingerprints on the copy of the pen packet and that he had found the fingerprints to be from the same person. The State used this identification to prove that the Exhibit was a copy of the appellant's pen packet. The packet revealed that the appellant had been convicted previously for an offense of aggravated robbery, as was alleged in the indictment. The Court found the enhancement portion of the indictment to be true.

The Court of Criminal Appeals has held consistently that a prior conviction alleged for enhancement may be established by the introduction into evidence of a certified copy of the prior judgment and sentence and by records of the Texas Department of Corrections (a pen packet) which includes fingerprints of the defendant. The fingerprints on the pen packet must be identified by an expert witness as identical to known prints of the defendant. *Vessels v. State,* 432 S.W.2d 108 (Tex.Cr.App.1968).

Exhibit No. 2 was not certified as a true copy of the appellant's pen packet, nor was a custodian of the pen packets records called to testify that the exhibit was a true copy of the original pen packet. Expert witness, Borgstedt, could testify that the fingerprints on the three-by-five card and on the copy of the pen packet were identical, but he could not testify as to the authentication of the pen packet. This exhibit was being offered as proof of its contents, that is, to prove that the appellant had been previously convicted for aggravated robbery, and not merely to prove the existence of a pen packet.

In *Vessels v. State, supra,* the prosecutor introduced into evidence a copy of what was evidently the appellant's "rap sheet," which contained an enumeration of the appellant's prior convictions. The Court held that the instrument had not been certified or authenticated in any manner so as to authorize its introduction under the provisions of Article 3731a, Tex.Rev.Civ.Stat. Ann. The Court held that admission of the rap sheet was reversible error.

Tex.Rev.Civ.Stat.Ann. Art. 3731a, Section 4 (Vernon Supp. 1980–1981) of the Rules of Evidence reads in part:

Section 4. Such writings or electronic records may be evidenced by an official publication thereof or by a copy or electronic duplication attested by the officer having the legal custody of the record or by his deputy. Except in the case of a copy of an official writing or official electronic recording from a public office of this State or a subdivision thereof, the attestation shall be accompanied with a certificate that the attesting officer has the legal custody of such writing.

The xeroxed copy of the appellant's pen packet was not authenticated under the procedure of Article 3731a, and a proper predicate was not laid for the admission of this copy in order to prove the enhancement portion of the appellant's indictment.

When enhancement and punishment are before the court without a jury, pursuant to Tex.Code Crim.Pro.Ann. article 37.07, and error is committed, the case shall be remanded to the trial court for proper hearing and assessment of punishment without a jury. See *Bullard v. State,* 548 S.W.2d 13 (Tex.Cr.App.1977).

The appellant's second ground of error is sustained.

The appellant's third ground of error urges that the trial court erred by placing an unreasonable time limitation upon the appellant's voir dire examination of prospective jurors, and thereby, deprived him of a fair and impartial jury, of the right to be heard by counsel, and of the right to effective assistance of counsel in violation of the federal and state constitutions.

The court stated that each side would be limited to forty-five minutes for its voir dire examination of the prospective jurors. The defense counsel objected to this limitation upon the grounds that the appellant's Sixth Amendment right to effective counsel would be violated. The defense attorney submitted a memorandum of law supporting his request for additional time. The court admitted into evidence court's Exhibit No. 1, the juror information forms. The court then overruled the defense attorney's objection to the forty-five minute limitation, and the voir dire examination proceeded.

In *Plair v. State,* 102 Tex.Crim. 628, 279 S.W. 267 (1925), the Court of Criminal Appeals held that counsel has a right to ask any questions of the venire panel which may aid him in intelligently using his peremptory challenges. The court recognized that it is within the trial judge's discretion to set reasonable limitations upon the scope of the questions asked. The court held, however, that counsel has a right to question the prospective jurors individually as to their qualifications. "There is a certain degree of timidity and diffidence about some jurors that would be calculated to cause them to remain silent unless personally called upon to answer any question."

The present case is distinguishable from *Plair, supra,* however, because the court did not restrict the defense counsel's questions to individual members of the panel, but restricted the total amount of time that counsel could question the panel.

In the case of *De La Rosa v. State,* 414 S.W.2d 668 (Tex.Cr.App.1967), the trial judge instructed the attorneys that each side would be limited to thirty minutes in which to conduct voir dire examination of thirty-two jurors. The appellant's attorney objected, in writing, that such a limitation would deprive him of asking each prospective juror his name, address, marital status, place of employment, religious and educational background, et cetera. The attorney's request for an additional fifteen minutes for voir dire examination was denied. His request to perfect his bill of exceptions to show what the jurymens' answers would have been, and how he had been harmed, was denied. The record revealed that he used at least four of his peremptory challenges on prospective jurors whom he had not been allowed to question individually. The Court of Criminal Appeals held that the appellant had been denied an adequate voir dire examination of the jury panel:

> We recognize that it is not only the right but the duty of the trial court to confine the examination of prospective jurors within reasonable limits. If this was not

so, some trials would never terminate. *Grizzell v. State,* 164 Tex.Cr.R. 362, 298 S.W.2d 816 (1956). This duty does not carry with it, however, the authority to refuse appellant's counsel the privilege of examining each juror individually within reasonable limits.

In the present case, the attorneys were furnished with juror information cards which revealed the name, address, age, occupation, employer, spouse, spouse's employer, and religion, of each juror. In addition, the card requested of each juror the length of time he had resided in Harris County, whether the juror had been accused ever of a crime and whether he had served ever before on a civil or criminal jury panel. The defense attorney in *De La Rosa* did not have access to this information concerning each juror. The prosecutor in the present case asked the jury a number of questions concerning the elements of law involved in the case, their ability to apply the appropriate burden of proof and their ability to decide the credibility of witnesses. The individual jurors were asked also about their prior experiences in other criminal matters. The appellant's attorney asked the panel a number of questions about their prejudices and experiences which could influence their decision in the case. There was no need for the appellant's attorney to duplicate questions that had been asked previously by the prosecutor. See *Smith v. State,* 513 S.W.2d 823, 827 (Tex.Cr.App.1974). The record reveals that the attorneys used their time for voir dire examination efficiently. All of the essential elements of the indictment and of the court's charge seem to have been touched upon with the jury panel. The appellant's attorney asked the jurors individual questions on a number of topics. At the end of his time he made no request for additional time to examine the panel; and after the selection of the jury, he stated his approval of its constitution. There is nothing in the record for the appellate court to review. See *Collins v. State,* 548 S.W.2d 368, 371 (Tex.Cr.App.1976). Appellant's third ground of error is overruled.

The appellant's fourth ground of error is an assertion that the trial court erred in overruling the appellant's motion to suppress the identification testimony of the State's witness.

On June 9, 1980, the court had conducted a hearing concerning complainant's identification of the appellant out of the presence of the jury, and she related the robbery incident to the court. She testified that it was daylight when she was robbed and that nothing was covering the face of the robber. During the hearing, she positively identified the appellant as the man who robbed her. She testified that she had described the robber to the police as being a black man "about five-six, light complexion, medium Afro, about 150 pounds." After some investigation, the police presented the complainant with some pictures to look at, and the complainant picked the appellant's picture out of a pile of pictures. She later identified the appellant in a police lineup. Complainant testified that she did not feel that she was influenced by the police in her selection of the appellant's photograph nor in her identification of the appellant at the lineup.

After the court denied the appellant's motion to suppress the witness's identification of the appellant, the jury was called back into the courtroom, and the trial began. That same day, however, the court declared a mistrial. On the following day, June 10, the trial, from which this appeal arises, began before a new jury. The appellant's motion to suppress the identification testimony of the complainant and the court's hearing and ruling on that motion were incorporated into the new trial proceedings. She identified the appellant as her assailant in the courtroom.

There is nothing to suggest that the complaining witness's identifications of the appellant as her robber were unduly suggestive. The complainant immediately picked the appellant out of the photographs. The officer did not try to influence her in her selection. She testified that no one tried to influence her at the lineup. She was able to identify the appellant in court. "The trial court was the trier of the facts, the

credibility of the witnesses and the weight to be given to their testimony. The court was free to accept or reject the testimony of any witness." *Limuel v. State,* 568 S.W.2d 309, 311 (Tex.Cr.App.1978).

There is enough evidence to support the finding that the witness's observation of the appellant during the offense was sufficient to serve as an independent basis for her in-court identification of the appellant. See *Clay v. State,* 518 S.W.2d 550 (Tex.Cr. App.1975); *O'Brien v. State,* 591 S.W.2d 464 (Tex.Cr.App.1979). The appellant's fourth ground of error is overruled.

The appellant asserts in his fifth and final ground of error that the absence of the appellant's requested charges from the appellate record requires a reversal because the appellant has been denied the right to an effective appeal.

During the preparation of the court's charge, the appellant's counsel submitted his own proposed charges to the jury on the issues of alibi and opinion evidence, and on the definition of reasonable doubt. The court denied counsel's request to substitute counsel's charges for its own.

The appellant's counsel requested of the clerk of the court that his proposed charge to the jury be included in the appellate record. Upon receiving notice that the appellate record was complete, the appellant filed a Motion for Hearing to Determine Status of the Appellate Record. The appellant alleged that certain documents, which he had requested be included in the record, had been lost by court personnel and were not in the record. At the hearing, the court found that four items which the appellant had requested to be included in the appellate record had been lost. The court found one of these items, and it was placed in the record. The appellant submitted copies of two of the lost items, and these were readily admitted into the record without objection. The fourth item, the proposed charges, could not be found. The appellant's counsel, however, did not attempt to reconstruct these charges, except to state at the hearing that the charges related to opinion testimony, alibi, reasonable doubt,

and eye-witness testimony. The court ruled that these proposed charges had been timely submitted and timely overruled at trial.

The appellant did not avail himself fully of the provisions of Tex.Code Crim.Pro. Ann. art. 44.11 (Vernon 1979); and therefore he cannot complain that the record is incomplete. Article 44.11 reads in part:

In cases where the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the Court of Criminal Appeals as in other cases.

In *Coble v. State,* 501 S.W.2d 344 (Tex.Cr. App.1973), the appellant objected that his requested charges were not included in the appellate record. The court held:

The record does not reflect any attempt on the part of appellant to make any substitution for the alleged lost instrument as provided for in Article 44.11, V.A.C.C.P. "[T]he trial court may make substitutions for lost or destroyed documents, and under 40.09, Sec. 7, his findings, if supported by evidence at the hearing, are final."

Nowhere does the appellant attempt to set forth what his requested charge contained nor does appellant state how he was harmed by virtue of the court's failure to grant same. We perceive no error.

*Coble* is analogous to the present situation. The record reveals that the court was willing to comply with the appellant's requests to complete the appellate record. Nothing prevented the appellant from paraphrasing what his original charges had contained at the hearing. The appellant made no attempt to do so. He should not be allowed to use his failure to act as an excuse to overturn the judgment of the trial court.

The appellant's fifth ground of error is overruled.

The judgment of the trial court is reversed and remanded for a new hearing on enhancement and punishment before the court without a jury.

SMITH and DYESS, JJ., also sitting.

Opinion on Motion for Rehearing

BASS, Justice.

Appellee's motion for rehearing addresses the point concerning "the xeroxed copy of the appellant's pen packet (Sx–2) was not authenticated under the provisions of Article 3731 (Section 4, Tex.Rev.Civ.Stat.Ann.), and a proper predicate was not laid for the admission of this copy to prove the enhancement portion of the indictment."

The record on appeal did not have Sx–2 forwarded to the Court of Appeals. The testimony of the officer stated that Sx–2 was a xeroxed or photocopy, and was not an original. Since the filing of the Motion for Rehearing by the appellee the exhibit (Sx–2) has been delivered to the Court of Appeals.

The pen packet (Sx–2) has the original certification from the proper officer and the xeroxed copies of the judgment, sentence, fingerprints and photographs, attached thereto and made a part thereof, are now properly before the Court of Appeals.

The proper predicate has been and was properly laid in the trial court pursuant to Article 3731a (Section 4, Tex.Rev.Civ.Stat. Ann.).

The appellee's motion for rehearing is granted and the appellant's motion is denied. This court's former judgment of April 22, 1982 is vacated, set aside and annulled.

The judgment of the trial court is affirmed.

/s/ Sam Bass
Associate Justice

DYESS and SMITH, JJ., not participating.