**Arnold MUNOZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–87–472–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 8, 1988.

Rehearing Denied Jan. 5, 1989.

 

James R. Lawrence, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before UTTER, KENNEDY and DORSEY, JJ.

## OPINION

UTTER, District Judge.

A jury convicted Arnold Munoz for murder. After finding appellant had been previously convicted of two felonies, the jury enhanced and assessed punishment at life imprisonment. We affirm the judgment of the trial court.

By his first point of error, appellant contends the trial court erred in not allowing him to properly cross-examine the witness, Sandra Morales, on her mental state. According to allegations in the appellant's brief, "the court disallowed any evidence concerning this witness' psychiatric history." Appellant perfected a bill of exceptions wherein he cross-examined Morales regarding various hospital admissions, and sought to admit defense exhibits 22 through 26 which are copies of the witness' medical records resulting from those admissions.

In deciding whether evidence of a mental illness or disturbance which occurred prior to the event in question should be admitted into evidence, great deference should be given the trial judge in its determination of which and to what extent collateral evidence on that issue should be admitted. *Virts v. State*, 739 S.W.2d 25, 28 (Tex.Crim.App.1987). The right of cross-examination, while constitutionally secured, is not without limits. *Id.* The trial judge retains latitude to impose reasonable limits on cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of issues, and the witness' safety. *Id.; see also Hurd v. State*, 725 S.W.2d 249, 252 (Tex.Crim.App.1987); *Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim.App.1982); *Carillo v. State*, 591 S.W. 2d 876, 886 (Tex.Crim.App.1979). In short, the trial judge must balance the probative

value of the evidence sought to be introduced against the risk its admission may entail.

On direct-examination, Morales testified that she had used drugs when she was 12–13 years old, that she did not recall being admitted to Memorial Hospital for a drug overdose in 1986, and that she was not "high on drugs or alcohol or anything" at the time of the shooting. She was fifteen years old when she witnessed the murder.

On cross-examination, Morales testified that she was admitted to the hospital on 9/8/86 for an alcohol problem, but not for drugs. However, she then admitted that her drug screening showed she was "cocaine positive" at the time. She also admitted she had been on drugs (LSD) since she was 12–13 years old, but denied having been on heroin. She then denied that she had previously testified she was addicted to heroin and cocaine. She stated she does not smoke marihuana, and that she knows several policemen, C.I.D. officers, and drug officers. She again denied drinking any alcoholic beverages or taking any narcotics that evening and again denied having ever been addicted to heroin. She testified that she had been in the hospital once for drug abuse, but not ten times since 1984 as posed by defense counsel. Lastly, she admitted that she had been previously treated by two psychiatrists, Dr. Lawrence Taylor and Dr. Gilbert Maldonado, the latter having been when she was thirteen years old.

Appellant perfected a bill of exceptions wherein he offered Morales' "psychiatric testimony." Morales stated that she had been to the Memorial Medical Center for psychiatric evaluation or treatment or counselling on more than one occasion. Thereafter, appellant cross-examined Morales on the contents of five medical record reports (defense exhibits 22 through 26) dated 5/14/86, 3/25/86, 2/11/86, 7/7/84, and 4/13/84. During this cross-examination, she testified that she had been admitted by various doctors to the Memorial Medical Center's mental ward for depression, but either substantially denied or stated she didn't remember having ever been admitted for drug abuse and conduct disorders. She also denied that she was a well-known psychiatric patient and stated she had not been diagnosed as being "very manipulative." Appellant then offered the above exhibits for the jury to evaluate Morales' mental state of mind from 1984 to 1986, and to impeach her prior testimony that she had not been addicted to any drugs or had a drug problem. The exhibits were admitted for purposes of the bill of exceptions only.

 Although the State argues at length that appellant has failed to preserve error, we find and hold appellant has properly preserved error, if any. When the issue before the appellate court is whether counsel for appellant was denied the opportunity to cross-examine a State's witness in the presence of the jury about something which may have affected her credibility, appellant must merely establish what general subject matter he desired to cross-examine the witness about and, if challenged, show on the record why such should be admitted into evidence. *Virts*, 739 S.W.2d at 29. Inasmuch as appellant expressed to the court that he wanted this matter before the jury on the issue of Morales' mental state and for impeachment purposes, appellant has done all that is required.

 We now consider appellant's desire to introduce the above "psychiatric" evidence for impeachment purposes. The testimony of psychiatric experts is generally not admissible for purposes of impeachment, because the benefit to be gained from such testimony is not great enough to offset the disadvantages of delay, confusion and expense. *Virts*, 739 S.W.2d at 27, n. 1.; *James v. State*, 546 S.W.2d 306, 311 (Tex.Crim.App.1977); *Hopkins v. State*, 480 S.W.2d 212, 220–21 (Tex.Crim.App. 1972); *Beavers v. State*, 634 S.W.2d 893, 898 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd). Moreover, appellant cross-examined Morales on her drug usage and even showed that although Morales testified she was not admitted to the hospital on 9/8/86 for a drug problem, a drug screening was performed during that admission which indicated she was positive for co-

caine. The record further reflects that she was extensively cross-examined on various other theories posed by appellant to show Morales bias, motive and prejudice in testifying and that the trial court permitted impeachment by usage of prior inconsistent statements.

█ We next turn to the question of whether the trial court erred in excluding evidence which would have revealed Morales' mental state from 1984 to 1986. First, it appears that several of these hospital admissions reports may have been inadmissible under Tex.R.Crim.Evid. 510. This rule expressly states that "a communication to any person involved in the treatment or examination of alcohol or drug abuse by a person being treated voluntarily or being examined for admission to treatment for alcohol or drug abuse is not admissible." Most, if not all, of the information revealed by Morales in the Bill of Exceptions is directly from these reports. Second, we are concerned that if such evidence should be admitted, that experts would be necessary to explain both the contents and meaning of the "psychiatric testimony" found in those reports, and that subsequent psychiatric examinations may then be necessary to check the veracity of those documents. We seek to avoid putting the witness on trial by means of a "battle of the experts" wherein psychiatrists would be called not for the general knowledge they can bestow, but for the partisan benefit which the party who calls the witness hopes to receive. As the Court of Criminal Appeals expressed in *Hopkins*, 480 S.W.2d at 221, "after being subjected to several conflicting, equivocating and highly technical psychiatric opinions, the jury may actually be more confused than before." We do not hold that such testimony is inadmissible, but that the trial court should have great latitude in limiting such collateral evidence, based on the relevance and probative value to that particular case.

We have carefully reviewed the record and hold that appellant received reasonably effective cross-examination. We further hold that the excluded testimony's probative value was far outweighed by its poten-tial for abuse and other disadvantages such as harassment, embarrassment, confusion of issues, undue delay and the witness well-being. We conclude the trial court did not abuse its discretion in limiting such cross-examination. We overrule appellant's first point of error.

By his second point of error, appellant contends the evidence was insufficient to establish the "identity" of the appellant as the actor who committed the murder.

In reviewing the sufficiency of the evidence, whether direct or circumstantial, an appellate court looks at all the evidence in the light most favorable to the verdict and determines whether any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984).

█ Evangelina Valdez testified that she went to Tina's Lounge with her son, Rick, sometime after 1:30 a.m. on the night of the shooting. Valdez saw the victim at Tina's prior to the shooting and described her as being drunk, upset and crying. Appellant and the victim were dating, but had just recently "split up." The victim told her "she wanted [Valdez] to get them back together or to talk to [appellant] about it." Valdez had known appellant since she was fourteen years old and was a close friend. When the bar closed, Valdez and the victim walked outside and exchanged phone numbers so that she could invite them over for dinner. As Valdez walked back towards her car, a small dark colored car entered the parking lot at a fast rate of speed and stopped. The man inside the car began yelling bad words at the victim, pulled a pistol and shot her. Valdez, scared, then ran towards the gunman yelling "Arnold, Arnold, Arnold, it's me, Eva." Valdez was subsequently shot in the stomach. Valdez testified that it was light enough out there for him to shoot quite accurately, and that he had long hair and high cheekbones, both of which she described appellant as having. Appellant also drove a small navy blue car at the time.

Rick Silvas, Valdez's son, testified he accompanied his mother to Tina's around 1:00–1:30 a.m. on the night of the shooting. They left together when the bar closed, and he waited for his mother in their car while she talked to the victim. He said a small dark blue or black car pulled up and that he heard gunfire. He hid when the shooting started. He testified that he didn't see the person that did the shooting, but that he heard his mother say "Arnold, it's me, Eva." He further testified that the driver was the only person in the car, and that there was enough light to see appellant's face, but that he didn't see it.

Sandra Morales was walking by Tina's on the way home from a friends at the time of the shooting. She testified that she saw appellant drive into the parking lot, saw a gun come out from the driver's side, heard gunshots, and then saw the victim on the ground shot. She further testified appellant was the only person in the car and that she knew appellant before that night and had previously seen his car on several occasions.

Numerous other witnesses testified that appellant had been dating the victim but that they had recently broken up. Police officers Raymond Lear and Ted Arellano testified they were working an extra job at the Sojo Club from 11:00 p.m. to 2:30 a.m. that night. Lear stated he saw appellant come into the club around midnight dressed in a Budweiser uniform, but that around 1:15 a.m. he noticed appellant was not around. Arellano stated he saw appellant return to the club around 2:30 a.m. He testified appellant was very anxious to get back into the club and appeared nervous and was sweating. He stated appellant was wearing a Budweiser shirt and that appellant caught his attention because he was trying to cut ahead of other people in front of him in line. Lastly, pictures admitted at trial showed appellant owned a small, navy blue car on the day of the murder.

Evidence of identity can be proven by direct or circumstantial evidence, and the weight and credibility of the witnesses is for the jury to consider. *Earls v. State,* 707 S.W.2d 82, 85 (Tex.Crim.App.1986); *Bowden v. State,* 628 S.W.2d 782, 784 (Tex. Crim.App.1982). We hold the evidence sufficiently identified appellant as the person who shot the victim. *See McDonald v. State,* 513 S.W.2d 44, 46 (Tex.Crim.App. 1974); *Creech v. State,* 718 S.W.2d 89, 90 (Tex.App.—El Paso 1986, no pet.). We overrule appellant's second point of error.

By his third point of error, appellant contends the trial court erred in allowing the State to impeach a witness through the use of Rule 607 in the new Texas Rules of Criminal Evidence.

 Appellant raises this argument for the first time on appeal. Error related to the examination of witnesses or to the admission of evidence is not preserved for appellate review absent a timely objection at trial. *Crocker v. State,* 573 S.W.2d 190, 205 (Tex.Crim.App.1978). We overrule appellant's third point of error.

The judgment of the trial court is AFFIRMED.