Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



MARTIN GOLPHIN,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00092-CR

Appeal from the

120th District Court

of El Paso County, Texas

(TC# 20050D00176)




O P I N I O N

            This is an appeal of a jury conviction for aggravated assault with a deadly weapon. 
Appellant was indicted for the offenses of aggravated assault with a deadly weapon and burglary
of a habitation by entering and committing and attempting to commit assault. The jury found
him guilty of aggravated assault with a deadly weapon, but not guilty of burglary of a habitation. 
The jury found that Appellant did not use or exhibit a deadly weapon. The court assessed
punishment at thirty-five years’ imprisonment on the aggravated assault charge. We affirm.
            On April 27, 2004 at about 6 a.m., the complainant, Norma Salas, looked out her window
and saw Appellant parked outside in a white truck. Salas and Appellant had previously had a 
relationship. She was four months pregnant and she had told Appellant that the child was his
because she was afraid of what he might do to her if he learned that the child was actually not
his. Salas’s father looked out the window and Appellant drove away.
            At about noon, Salas heard a car horn and she saw Appellant outside the house. Her
mother was the only other person in the house. Salas became afraid and tried to wake up her
mother. Her mother did not awaken as she had taken some medication and Salas took a phone
from that room and went into the living room. The Appellant was standing in the living room. 
Appellant searched Salas’s clothing and then slapped her in the face. Then he dragged her by the
hair outside. Appellant searched the inside of her clothing again. Then he got into his truck and
he put the truck into reverse. Salas then spoke to 911 operators and gave them the truck’s license
number. Appellant got out of his truck, and he slapped her in the face again. Appellant then
grabbed the phone and broke it. Appellant then got back into his truck. He reversed the drive
and accelerated quickly toward Salas. She was standing in front of her father’s blue car. Salas
feared for her life and that of the child she was carrying, so she quickly moved out of the way. 
Appellant barely missed her and he struck the blue car. Appellant left and Salas went to call the
police from her neighbor’s house.
            Officer Robert Concha of the El Paso Police Department testified that he was dispatched
to Salas’s residence. He arrived to find her hysterically crying and shaking. Her voice shook as
he interviewed her. Officer Concha investigated the scene and determined that there was fresh
damage to the blue car. He viewed that damage and the tire marks on the ground and concluded
that the evidence was consistent with another vehicle striking the car at full force; albeit, the
damage to the blue car was minor. Officer Concha also testified that Salas’s face had a red
discoloration that was consistent with her having been slapped. The officer stated that if
Appellant’s truck had hit Salas, he had no doubt it would have been capable of causing serious
bodily injury or death. Officer Concha stated the truck was described as a Ford F-350 flatbed
white truck with license plate number 2PY-W23.
            Officer Leonard Harris, Jr., a police officer with the criminalistics section of the El Paso
Police Department, stated that on April 27, 2004, he was called out to view a white truck and a
blue Nissan car. He took a photograph of the truck. The truck was a F-350 with license plate
9PYW23. The truck had been in a collision; there was damage to the lower front bumper. 
Officer Harris testified that there was a paint transfer of blue paint on the truck’s bumper and he
took a sampling of that paint as evidence.
            In Issues One through Three, Appellant asserts the evidence is legally and factually
insufficient to support the conviction, and the trial court erred in receiving an inconsistent
verdict. In reviewing the legal sufficiency of the evidence, we are constrained to view the
evidence in the light most favorable to the judgment to determine whether any rational trier of
fact could find the essential elements of the offense, as alleged in the application paragraph of the
charge to the jury, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989); Humason v.
State, 728 S.W.2d 363, 366 (Tex.Crim.App. 1987). More particularly, sufficiency of the
evidence should be measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997).
            Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex.Crim.App. 1989), cert. denied, 498 U.S. 951, 111
S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex.App.--El Paso
1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or evaluate the
credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given
great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex.App.--El Paso 1995, pet.
ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819
S.W.2d 839, 843 (Tex.Crim.App. 1991); Leyva v. State, 840 S.W.2d 757, 759 (Tex.App.--El
Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.App.--El Paso 1992, no pet.). 
Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact
are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. 
Adelman, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in
favor of the verdict. Matson, 819 S.W.2d at 843, quoting Moreno v. State, 755 S.W.2d 866, 867
(Tex.Crim.App. 1988). The trier of fact, not the appellate court, is free to accept or reject all or
any portion of any witness’s testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex.App.--El
Paso 1995, pet. ref’d).
            In reviewing the factual sufficiency of the evidence to support a conviction, we are to
view all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence
is factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to
allow the verdict to stand, or the finding of guilt is against the great weight and preponderance of
the available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for
and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken
alone, is greatly outweighed by contrary proof. See id. In performing this review, we are to give
due deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The
fact finder is the judge of the credibility of the witnesses and may “believe all, some, or none of
the testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently,
we may find the evidence factually insufficient only where necessary to prevent a manifest
injustice from occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997).
            Appellant contends that even though the jury found Appellant guilty of aggravated
assault, they made a finding that Appellant did not use or exhibit a deadly weapon. Appellant
reasons that the court erred in accepting the verdict and the evidence is legally and factually
insufficient because the jury’s findings negate the element of the offense requiring the exhibition
or use of a deadly weapon.
            Inconsistent verdicts do not necessarily require reversal for legal insufficiency. Jackson
v. State, 3 S.W.3d 58, 61 (Tex.App.--Dallas 1999, no pet.), citing Dunn v. United States, 284
U.S. 390, 393-94, 52 S.Ct. 189, 76 L.Ed. 356 (1932). The conclusion does not necessarily follow
that the fact finder has decided to convict a defendant on insufficient evidence when it renders
inconsistent verdicts. The fact finder may simply be exercising its desire to be lenient, or
executing its own brand of executive clemency and the verdict should not be upset by appellate
speculation or inquiry into such matters. Id. We are limited to determining whether there is
sufficient evidence to support the charge on which a conviction is returned.
            The application paragraph of the court’s charge to the jury required the jury to find that
Appellant, “threaten[ed] Norma Salas with imminent bodily injury and did then and there use or
exhibit a motor vehicle as a deadly weapon that in the manner of its use or intended use was
capable of causing death or serious bodily injury during the commission of the assault, . . . .”
            In this case, the evidence revealed a series of criminal events occurred from the time of
Appellant’s entry into the house until he fled the scene. Salas was searched, slapped, and
dragged outside the house. There she was slapped again and her phone was grabbed and broken. 
Appellant proceeded to get back into his truck and accelerated his truck towards Salas. She ran
out of the way and Appellant collided with another car. Salas testified that she was in fear for
her life and that of her unborn child. And we also have Officer Concha’s testimony that a truck
driven in such a manner is a deadly weapon capable of causing serious bodily injury or death. 
We find that the evidence is legally and factually sufficient to support the conviction.


 See
Anderson v. State, 11 S.W.3d 369, 376 (Tex.App.--Houston [1st Dist.] 2000, pet.ref’d). Issues
One through Three are overruled.
            In Issue Four, Appellant contends that the court erred by denying Appellant’s motion for
mistrial on two occasions when the complainant referred to an extraneous offense. During the
guilt-innocence stage of trial, the prosecutor asked the complainant, Norma Salas, what happened
after she looked out the window of her house and saw Appellant outside. The following
exchange occurred:
WITNESS:Well, I found him and I saw his face, and . . . . Well, the way he
looked, I mean, he was high. And, well, other times--
 
DEFENSE:I’m going to object, Your Honor, to the extraneous.
 
COURT:Sustained.
 
DEFENSE:At this time, Your Honor, I would ask for an instruction to the jury
to disregard that comment now. 
 
COURT:Disregard the last comment. 
 
DEFENSE:And I would move for a mistrial. 
 
COURT:Denied.

            Later, during the cross-examination of the same witness by defense counsel, this
occurred:
DEFENSE:Okay. Now let’s talk about your relationship with Mr. Golphin. 
Where did you meet Mr. Golphin?
 
WITNESS:(No verbal response.)
 
DEFENSE:Did you meet him at a bar, did you meet him with a friend?
 
WITNESS: He was a dope dealer.
 
DEFENSE:Your Honor, I’m going to object to the extraneous.
 
COURT:Sustained.
 
DEFENSE:And ask that the jury disregard that last statement.
 
COURT:Disregard the last statement.
 
DEFENSE:And I would move for a mistrial.
 
COURT:Denied.

            Later during the cross examination, defense counsel queried:
 
DEFENSE:Okay. When you broke up from the relationship, were you afraid
of him?
 
            WITNESS:     (No verbal response.)
 
DEFENSE:Was that one of the reasons you broke up?
 
WITNESS:The reason I broke with him is because I wanted to stop the drugs
and everything else.
 
DEFENSE: Okay.
 
WITNESS: I wanted to start a new life and . . . .
 
DEFENSE:Uh-huh. When you say “drugs,” you did drugs?
 
WITNESS:Yes, sir. I did.
 
DEFENSE:Okay. When did you stop doing drugs?
 
STATE:Objection, Your Honor. Irrelevant.
 
WITNESS:When I left him.
 
COURT:Overruled.

            We review a trial court’s denial of a motion for mistrial under an abuse of discretion
standard. Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). Mistrial is a device used to
halt trial proceedings when the error is so prejudicial that expenditure of further time and
expense would be wasteful and futile. Id. To determine whether a given error necessitates a
mistrial, we must examine the particular facts of the case. Id. Ordinarily, a prompt instruction to
disregard will cure the prejudicial effect of an improper question and answer, including those
regarding extraneous offenses. Ovalle v. State, 13 S.W.3d 774, 783 (Tex.Crim.App. 2000);
Kemp v. State, 846 S.W.2d 289, 308 (Tex.Crim.App. 1992). A mistrial is required only when the
impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to
suggest the impossibility of withdrawing the impression produced on the minds of the jury. 
Hinojosa v. State, 4 S.W.3d 240, 253 (Tex.Crim.App. 1999). Further, any error in the admission
of evidence is cured when the evidence comes in elsewhere without objection. Ethington v.
State, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991).
            We first address the State’s contention that Appellant has failed to preserve his complaint
on appeal. In order to preserve error, the complaining party must raise a timely, specific
objection and obtain a ruling thereon. Tex.R.App.P. 33.1(a). Furthermore, the complaining
party must complain each time the inadmissible evidence is offered. Ethington, 819 S.W.2d at
858. In this instance, while Appellant objected to the drug usage and dealing comments initially,
he failed to object when he elicited a response that clearly implied drug usage on the part of
Appellant. Accordingly, Appellant has failed to preserve this issue on appeal.
            Even if error had been preserved, it has been consistently held that a curative instruction
is sufficient to render objectionable testimony concerning drug usage or drug dealing harmless. 
See Hopkins v. State, 480 S.W.2d 212, 216 (Tex.Crim.App. 1972); January v. State, 678 S.W.2d
243, 248 (Tex.App.--Corpus Christi 1984, pet. ref’d). We note that the complained-of response
was elicited by the defense and no further references were made to drug use or drug dealing save
for the aforementioned testimony elicited by the defense concerning the prior relationship
between Appellant and Salas. Issue Four is overruled.
            In Issue Five, Appellant maintains that as no affirmative deadly weapon finding was
entered by the trial court, Appellant should not be required to serve half of his sentence before
becoming eligible for parole. Appellant cites Tex. Gov’t Code Ann. § 508.145(d) (Vernon
Supp. 2006) and Ex parte Brooks, 722 S.W.2d 140, 142 (Tex.Crim.App. 1986) for the
proposition that Appellant should not be required to serve one-half of the thirty-five year
sentence before becoming eligible for parole. Appellant does not otherwise state what relief he
seeks with regard to this contention. The judgment and sentence clearly reflect that the jury
found that Appellant did not use or exhibit a deadly weapon during the commission of the
offense. Accordingly, Issue Five is overruled.
            We affirm the judgment of the trial court.
 
                                                                        DAVID WELLINGTON CHEW, Chief Justice

November 9, 2006

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment, not participating

(Do Not Publish)